## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
**JAMES BILTCLIFFE,**                   )
                                        )
          **Plaintiff,**                )
                                        )          **Civil Action No.**
          **v.**                        )          **12-11967-FDS**
                                        )
**CITIMORTGAGE, INC.,**                 )
                                        )
          **Defendant.**                )
_____)

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**SAYLOR, J.**

This action arises from a homeowner's default on a home loan and the resulting mortgage

foreclosure.  In 2004, plaintiff James Biltcliffe and his wife purchased a home in Bridgewater,

Massachusetts.   As part of the transaction, he and his wife granted a mortgage on the house to

the lender, which was ultimately assigned to defendant CitiMortgage, Inc..

 After the Biltcliffes fell behind on payments in 2008, CitiMortgage sent them default

notices, which informed them that the debt could be accelerated and a foreclosure sale

effectuated should the default not be cured.  In 2011, CitiMortgage proposed a loan modification

pursuant to the Home Affordable Modification Program ("HAMP"), a federal initiative designed

to provide incentives for lenders to agree to modification of home loan agreements in lieu of

foreclosure.  Biltcliffe made partial payments in the amounts set forth in the proposed

modification, but CitiMortgage never executed the modification agreement and proceeded to

foreclose on the property.

Biltcliffe commenced this action against CitiMortgage on October 11, 2012, in

Massachusetts Superior Court alleging (1) breach of contract, (2) unjust enrichment, and (3) breach of the implied covenant of good faith and fair dealing.[1]  CitiMortgage removed the action to this Court.  Jurisdiction is based on diversity of citizenship.

CitiMortgage has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons set forth below, the motion will be treated as a motion for summary judgment and granted.

## I.      Background

### A.      Factual Background

The facts are stated as alleged in the complaint and reflected by supplemental filings from both parties.

In 2004, plaintiff James Biltcliffe and his wife Kathleen purchased a home at 420 Spruce Street, Bridgewater, Massachusetts.  In connection with their purchase of the property, they received a loan and signed a mortgage in the original principal amount of $208,000.  The mortgage was ultimately assigned to defendant CitiMortgage, Inc., which serviced the loan. (Am. Compl. ¶¶ 3- 4).

The mortgage included a paragraph incorporating the statutory power of sale pursuant to Mass. Gen. Laws ch. 183, § 21 and providing conditions for acceleration of the debt.  That paragraph provided as follows:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The

---

[1] In the amended complaint, and in plaintiff's opposition to the motion for judgment on the pleadings, plaintiff suggested that he would be seeking leave to further amend the complaint to add claims pursuant to Mass. Gen. Laws ch. 93A.  However, as of the date of this memorandum and order, plaintiff has filed no such request for leave to amend.

> notice shall specify: (a) the default; (b) the action required to cure the default; (c)
> a date, not less than 30 days from the date the notice is given to Borrower, by
> which the default must be cured; and (d) that failure to cure the default on or
> before the date specified in the notice may result in acceleration of the sums
> secured by this Security Instrument and sale of the Property.  The notice shall
> further inform Borrower of the right to reinstate after acceleration and the right to
> bring a court action to assert the non-existence of a default or any other defense of
> Borrower to acceleration and sale.  If the default is not cured on or before the date
> specified in the notice, Lender at its option may require immediate payment in
> full of all sums secured by this Security Instrument without further demand and
> may Invoke the STATUTORY POWER OF SALE and any other remedies
> permitted by Applicable Law.

(Am. Compl. at Ex. A, ¶ 22).  The mortgage also provided that CitiMortgage could "accept any payment or partial payment insufficient to bring the [debt] current, without waiver of any rights [t]hereunder. . . ."  (Am. Compl. at Ex. A, ¶ 1).

The Biltcliffes defaulted on their repayment obligations in February 2008.  The Biltcliffes allege that they have no record of receiving any notice of default from CitiMortgage.  (*See* Pl. Opp. at 1-2; Am. Compl. ¶ 7).  CitiMortage has produced two demand letters, dated September 4, 2008, and September 24, 2008, that disclosed the amount of missed payments and late charges that the Biltcliffes would have had to pay before December 2008 in order to avoid foreclosure.  (*See* Am. Ans. at Ex. 3-4).  The letters also disclosed that "failure to cure the default by [December] may result in the acceleration of all sums due under the [mortgage]." (*Id.*).  Jeanne Pezold, a Business Operations Analyst at CitiMortgage, submitted an affidavit that the letters were sent on the dates recited above and verifying their authenticity.  (*See* Pezold Aff. at ¶¶ 7-11).  The Biltcliffes did not timely cure the default.

On April 9, 2010, CitiMortgage accelerated the debt.  CitiMortgage has produced a copy of an acceleration notice drafted by its foreclosure attorneys and addressed to the Biltcliffes at their home at 420 Spruce Street, Bridgewater, Massachusetts.  (*See* Am. Ans. at Ex. 5).  The

notice specifically stated that "the note is hereby accelerated and the entire balance is due and payable forthwith and without further notice." (*Id.*). The Biltcliffes deny ever receiving that acceleration notice and challenge its authenticity. Sarah Harmon, the attorney who drafted the letter, submitted an affidavit stating that the acceleration notice was sent on the date recited above and verifying its authenticity. (*See* Harmon Aff. at ¶¶ 2-3).

On March 28, 2011, the Biltcliffes filed a petition for bankruptcy under Chapter 13 in the Bankruptcy Court for the District of Massachusetts. (Am. Compl. ¶ 8).

On August 22, 2011, CitiMortgage sent a package of documents to the Biltcliffes purportedly offering them a finalized loan modification pursuant to HAMP. (*See* Am. Compl. at Ex. B). The package included a cover letter that outlined the steps necessary to "accept this offer," which included two steps: "[1] complet[ing] and return[ing] the enclosed agreement by the due date [August 30, 2011] . . . [and] [2] continu[ing] to make your trial period payments on time." (*Id.*) The loan modification agreement itself included the statement that "the Loan Documents [would] not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to [the borrower], and (ii) the Modification Effective Date . . . has occurred." (*Id.*). The Biltcliffes signed the loan modification agreement on August 29, 2011, and began making payments of $1,608.08 per month pursuant to its terms. (Am. Compl. ¶ 9). CitiMortgage never returned a signed copy to them. (*Id.* at ¶ 13).

On October 3, 2011, the Biltcliffes filed a motion in the bankruptcy action to allow a mortgage modification, attaching the copy of the loan modification agreement with their signatures on it. (*Id.* at ¶ 10). On October 25, CitiMortgage filed an objection to that motion, stating that it was "willing to review the debtor for loan modification, but requests that the debtor

be obligated to make his full monthly mortgage payment until a decision is made on the loan modification." (*Id.* at ¶ 11). On October 26, the Bankruptcy Court denied the motion, citing the fact that the loan-modification agreement submitted by the Biltcliffes had not been executed by CitiMortgage. (*Id.* at ¶ 12).

CitiMortgage has produced a number of letters that it contends were sent to the Biltcliffes in late 2011 and 2012 informing them that their loan modification request was denied. The first letter is dated December 9, 2011, and states, "[w]e are disappointed that we cannot approve a mortgage modification under the government's Home Affordable Modification Program (HAMP) at this time. Your mortgage terms will remain unchanged." (Pezold Aff. at Ex. A-5). CitiMortgage produced two other letters—dated December 13, 2011, and September 19, 2012—that contain identical statements. (*Id.* at Ex. A-5, A-8).

On August 8, 2012, CitiMortgage, through its attorneys, invoked the statutory power of sale by sending a notice of foreclosure sale. (Harmon Aff. at Ex. B-2). The notice was subsequently published on August 16. (Am. Compl. at ¶ 20).

On October 11, 2012, James Biltcliffe commenced this action in Massachusetts Superior Court. On October 22, the case was removed to this Court. The complaint alleges that defendant CitiMortage (1) breached the mortgage contract, (2) was unjustly enriched, and (3) breached the implied covenant of good faith and fair dealing.

### B.   The HAMP Program

In February 2009, the Secretary of the Treasury established HAMP under authority delegated to him by the Emergency Economic Stabilization Act of 2008 and the Troubled Asset

Relief Program ("TARP").  12 U.S.C. §§ 5201, 5211-5241.[2]  The goal of HAMP is to provide

relief to borrowers who have defaulted or are likely to default by reducing mortgage payments to

sustainable levels, without discharging any of the underlying debt.  *See* U.S. Dep't of the

Treasury, Supplemental Directive 09-01, *available at* https://www.hmpadmin.com/portal/

programs/docs/hamp_servicer/sd0901.pdf.  Under HAMP, loan servicers are provided with

$1,000 incentive payments for each permanent mortgage-loan modification completed.  *Id.* at 23.

These modifications proceed under a uniform process designed to identify eligible borrowers and

render their debt obligations more affordable and sustainable.  *Id.* at 1.

   The Department of the Treasury has issued a series of directives that provide guidance to

servicers implementing HAMP.  *Id.*  Under these guidelines, mortgage servicers are directed to

identify and solicit borrowers who are in default on their mortgage payments, or soon will be.

*See id.*  Within this group, borrowers may be eligible for a loan modification under HAMP if the

mortgage loan originated before January 1, 2009; if the mortgage is secured by the borrower's

primary residence; and if the mortgage payments amount to more than 31% of the borrower's

monthly income.  *Id.* at 2.[3]  To participate in HAMP, borrowers must submit an affidavit

documenting financial hardship.  *Id.* at 3.  In addition, the servicer must conduct a Net Present

Value ("NPV") test, which assesses whether it would be more advantageous to foreclose or to

modify the terms of the first-lien loan.  *Id.* at 3-5.

---

[2] The Department of the Treasury established HAMP jointly with the Federal Housing Finance Agency, the Federal National Mortgage Association ("Fannie Mae"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac").  *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 347 n.3 (D. Mass. 2011).

[3] There are several other eligibility requirements.  Among other things, the mortgage loan must be secured by property containing no more than four units, and, depending on the number of units, the guidelines set ceilings on the unpaid principal balance.  *See id.* at 2-3.

II.   <u>**Standard of Review**</u>

Defendant has moved for judgment on the pleadings under Fed. R. Civ. P. 12(c).  Under

Rule 12(d), when the parties have submitted, and the Court considers, supplemental materials

outside the pleadings on a Rule 12(c) motion, the Court must treat the motion as a motion for

summary judgment.  *See* Fed. R. Civ. P. 12(d).  In the event that the Court considers such

supplemental materials, the parties "must be given a reasonable opportunity to present all the

material that is pertinent to the motion." *Id.*; *see Rivera v. Centro Medico de Turabo, Inc.*, 575

F.3d 10, 15 (1st Cir. 2009); *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321

(1st Cir. 2008).  Here, after defendant filed its motion, plaintiff disputed the authenticity of

supplemental documents submitted as exhibits.  The Court indicated that it would treat the

motion as a motion for summary judgment and gave the parties additional time to supplement the

record with further exhibits and affidavits in support of, or opposition to, the motion.  Defendant

submitted a number of exhibits and affidavits pursuant to that order.[4]  This is a relatively

straightforward case with a limited set of operative facts, centered on disputes about documents

that have been made part of the record.   Under the circumstances, the Court finds that the parties

have been given reasonable opportunity to present all materials relevant to the motion and,

therefore, the disputed materials will not be excluded, but rather defendant's motion for

judgment on the pleadings will be treated as a motion for summary judgment.

Summary judgment is appropriate when the pleadings, the discovery and disclosure

---

[4] Plaintiff filed nothing by July 1, which was the deadline set by the Court for the submission of any supplemental exhibits or affidavits.  On July 2, apparently after reading defendant's newly filed affidavits and exhibits, plaintiff moved for additional time to respond to the Court's order, contending that it was surprised by the contents of defendant's submission.  The Court finds nothing surprising in defendant's filings; certainly the affidavits authenticating the documents that were already in the record (and which plaintiff disputed) should have been anticipated.  Accordingly, the Court finds that plaintiff has not shown good cause why his failure to timely respond to the Court's prior order should be excused and his motion for leave to file a late reply will therefore be denied.

materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

III.   **Analysis**

A.   **Breach of Contract**

Plaintiff contends that defendant breached the mortgage contract by not complying with its notice provisions before accelerating the debt and foreclosing on the property.  Plaintiff further contends that by accepting his payments in the amount specified in the proposed loan modification, defendant waived its right to accelerate the debt pursuant to any earlier notices. Instead, plaintiff contends, defendant was required by the mortgage contract, and by statute, to send a new notice of default before initiating the acceleration and foreclosure process.

Defendant contends that because the contract specifically provided that its acceptance of partial payment did not effectuate a waiver of its other rights under the mortgage, it could rely on the earlier notices when it invoked the statutory power of sale in 2012.  Plaintiff acknowledges that, under the terms of the mortgage contract, defendant did not waive its right to accelerate the debt by accepting his partial payments.  He contends, however, that by proposing the loan modification and accepting the partial payments, defendant thereby waived its right to any *prior* acceleration.

8

The mortgage contract, however, does not differentiate among the rights that are preserved when partial payment is accepted.  Instead, it states unequivocally that the mortgagee is free to accept partial payments "without waiver of *any* rights [t]hereunder."  (Compl. at Ex. A, ¶ 1) (emphasis added).  After sending the initial demand letters, the mortgage contract gives defendant the right to invoke the statutory power of sale, accelerate the debt, and foreclose on the property if the debt is not cured by the designated time.  Here, the default was not cured within the designated time period (or at any later time).  Accordingly, defendant, by operation of the mortgage contract, had the right to invoke the statutory power of sale.  Defendant was free to accept plaintiff's partial payments without waiving that right.

Plaintiff also contends both (1) that he never received the initial demand letters or the acceleration notice and (2) that the letters produced by defendant would have nevertheless been inadequate notice.  The latter point is easily addressed.  Defendant produced two initial demand letters, allegedly sent in September 2008.  Both indicated that the loan was in default, specified the amount due, gave plaintiff ninety days to cure the default, and warned that acceleration of the debt could occur if the default was not timely cured.  The mortgage contract required that such notices specify "(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration . . . ."  (Compl. at Ex. A, ¶ 22).  Accordingly, the initial demand letters complied with the terms of the contract.

Plaintiff insists that he never received the initial demand letters.  In making that allegation, he repeatedly contends that the letters produced by defendant have not been authenticated and were probably sent "by means of unverifiable first class mail."  Those

9

arguments are entirely unpersuasive.  First, the documents at issue have been authenticated by an affidavit executed by an agent of defendant; plaintiff has submitted no contrary evidence. Second, neither the mortgage contract nor Massachusetts law required defendant to send the demand letters by certified mail.  Finally, and most importantly, it is sufficient for defendant to prove that the letters were mailed; it need not prove that they were delivered.  Both parties agree that the 2007 version of the operative Massachusetts statute applies to the situation at issue here. That statute specifically provides that written notice "shall be deemed to be delivered to the mortgagor when delivered to the mortgagor or when mailed to the mortgagor at the mortgagor's address last known to the mortgagee or anyone holding thereunder."  2007 Mass. Ch. 206, Sec. 11, House Bill 4387 (Nov. 29, 2007).  An employee of defendant has averred that the letters were mailed on September 4 and 24, 2008 to plaintiff at 420 Spruce Street, Bridgewater, Massachusetts.  Aside from the claim that he never received them, plaintiff has put forth no evidence that defendant did not mail the initial demand letters.

Plaintiff further cites *Shane v. Winter Hill Fed. Sav. & Loan Assn.*, 397 Mass. 479, 484 (1986) for the proposition that "[sending] the debtor notice of his default and of the creditor's right to accelerate d[oes] not constitute a decision to accelerate."  He contends that defendant was required to take some separate positive action to accelerate the debt after the right-to-cure period specified in the demand letters expired.  *Accord Wilshire Enterprises, Inc. v. Taunton Pearl Works, Inc.*, 356 Mass. 675, 678 (1970) ("Under the clause in the case at bar, a default in payment requires a positive act, a decision to accelerate by the creditor.").  Plaintiff concedes that the acceleration notice produced by defendant would have constituted such a positive action; however, plaintiff contends that he never received the acceleration notice and challenges the

authenticity of the document produced by defendant.  The attorney who drafted the letter has

verified the authenticity of the acceleration notice and averred that she sent it to plaintiff at 420

Spruce Street, Bridgewater, Massachusetts, on April 9, 2010.

In any event, the Court need not even reach the issue of the authenticity of the

acceleration notice.  Neither the mortgage contract nor Massachusetts law required defendant to

send a subsequent notice when the debt was actually accelerated; defendant's initial demand

letters satisfied both the contractual and statutory notice requirements.  Plaintiff spends much

time emphasizing that the statutory notice requirements of Mass. Gen. Laws ch. 244, § 35A

contemplate notice and a right to cure "prior to acceleration."  Here, the initial demand letters

provided both notice and ample time to cure before acceleration occurred.  In fact, the debt was

not accelerated until almost two years after the initial demand letters were sent.  Under the

circumstances, there was no breach of the contract's notice requirements.

Defendant's actions likewise did not violate Massachusetts law.  Pursuant to Mass. Gen.

Laws ch. 244, § 35A, "any mortgagor of a residential property . . . shall have a 90 day right to

cure a default of a required payment as provided in such residential mortgage or note secured by

such residential real property by full payment of all amounts that are due without acceleration of

the maturity of the unpaid balance of such mortgage.  Thereafter, the mortgagee can accelerate

maturity of the unpaid balance 90 days after the date a written notice is given by the mortgagee

to the mortgagor."  *Id.*  The statutory provision does not include a requirement that a mortgagee

provide a *second* written notice before accelerating the debt if it accepted partial payment from

the mortgagor or if it discussed a potential modification with the mortgagor.  Accordingly,

defendant was not obligated to send a separate acceleration notice after accepting plaintiff's

partial payments and discussing a potential loan modification with him.

For the reasons set forth above, there is insufficient record evidence that defendant breached the mortgage contract.  Accordingly, defendant's motion will be granted with respect to the breach of contract claim.

### B.    Unjust Enrichment

Massachusetts defines unjust enrichment as the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005).  To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value.  *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 552 F.3d 47, 57 (1st Cir. 2009).

The complaint alleges that by accepting plaintiff's partial payments—pursuant to the terms of the proposed loan modification—defendant was unjustly enriched, because it never actually intended to modify plaintiff's loan.

However, plaintiff does not allege that he made payments in excess of the amount that he was required to pay under the mortgage.  In fact, the "partial" payments were by definition *less* than the amount owed.  Thus, he cannot claim that defendant was unjustly enriched by those payments.  Instead, his only possible claim for unjust enrichment rests on a finding that defendant did not have the authority to accelerate the debt, and thus was unjustly enriched by the unlawful foreclosure.  However, as set forth above, defendant did in fact have the authority to take those actions.

12

Furthermore, unjust enrichment is "an equitable remedy, and it is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." *Foley v. Yacht Mgmt. Group*, 2011 U.S. Dist. LEXIS 101476 (D. Mass. Sept. 9, 2011) (citing *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005) (internal quotations omitted). Here, the damages plaintiff claims on a theory of unjust enrichment are precisely the same damages that he claims on his breach of contract theory. That cause of action would suffice to provide an adequate remedy at law if plaintiff indeed suffered any cognizable injury. Accordingly, defendant's motions will be granted as to the claim of unjust enrichment.

### C.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract. *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's*, 411 Mass. at 471-72 (quotations omitted). Put another way, the parties to a contract implicitly agree "to deal honestly and in good faith in both the performance and enforcement of the terms of their contract." *Hawthorne's, Inc. v. Warrenton Realty, Inc.*, 414 Mass. 200, 211 (1993). "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Restaurants*, 441 Mass. at 385.

The implied covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship. *Uno Restaurants*, 441 Mass. at

385-86; *Accusoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001).  However, "[a] party may breach the covenant of good faith and fair dealing . . . without breaching any express term of th[e] contract.  Otherwise, the implied covenant would be a mere redundancy." *Massachusetts v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 240 (D. Mass. 2011) (quoting *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005)).  "The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." *Speakman*, 367 F. Supp. 2d at 132.

Plaintiff alleges that defendant breached the implied covenant of good faith and fair dealing by accelerating the debt and proceeding with the foreclosure without providing adequate notice and after accepting almost a year's worth of partial payments that he contends were made pursuant to a loan modification agreement.

It is true that when a mortgagee forecloses without the legal authority to do so, it is acting in bad faith in violation of its obligation to the mortgagor.  *See Blackwood v. Wells Fargo Bank, N.A.,* 2011 WL 1561024, *5 (D. Mass. 2011).  But here, as set forth in greater detail above, defendant retained the right to invoke the statutory power of sale after accepting partial payments from plaintiff.  Furthermore, it is undisputed that the default was never cured.  Therefore, defendant had the legal authority to foreclose on the property and plaintiff was not denied the protections of the contract in question.

Accordingly, defendant's motion will be granted as to the claim that it breached the implied covenant of good faith and fair dealing.

**IV.**     **Conclusion**

For the foregoing reasons, defendant's Motion for Judgment on the Pleadings, treated as

a motion for summary judgment, is GRANTED.

**So Ordered.**

                                                                  /s/ F. Dennis Saylor
                                                                  F. Dennis Saylor IV
                                                                  United States District Judge
Dated: July 10, 2013